UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KENNETH E. BAPTISTE,

    Plaintiff,

v.

B. MARTINEZ, et al.,

    Defendants.

Case No. 19-cv-06551-HSG

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. No. 25

## INTRODUCTION

This is a federal civil rights action filed pursuant to 42 U.S.C. § 1983 by a pro se state prisoner. Plaintiff, an inmate at California Training Facility – Central (CTF), alleges that defendants have improperly refused to reinstate his single cell status despite his mental health concerns. Dkt. No. 10 at 3.[1] For the reasons discussed below, the Court grants defendants' motion for summary judgment.

## FACTUAL BACKGROUND

This suit arises from plaintiff being denied single cell status at CTF. Plaintiff contends that Defendants Martinez, De Antoni, Wynn, and Howlin violated his Eighth Amendment rights when they refused to reinstate and/or recommend him for single cell status, despite his history of mental illness and in-cell violence, and failed to consider all necessary factors in their respective decisions. Defendants counter that (1) plaintiff's claims are unexhausted; and (2) they appropriately reviewed plaintiff's classification and mental health history and considered all relevant factors in reaching their cell-designation decisions. The following facts are undisputed unless otherwise noted.

---

[1] Defendants provided plaintiff with the required warnings under *Rand v. Rowland*, 154 F.3d 952, 962–63 (9th Cir. 1998) (en banc). (Dkt. No. 25-7.)

June 2016 Unit Classification Committee Hearing

Plaintiff was transferred to CTF from California Men's Colony (CMC) on June 8, 2016. (Martinez Decl., Dkt. No. 25-3 ¶ 4.)  Plaintiff's Unit Classification Committee (UCC) hearing was held on June 22, 2016.  (*Id.*)  Martinez, a supervising correctional counselor at CTF, served as the chairperson of the UCC hearing, at which the committee declined to grant plaintiff single cell status.  (*Id.* ¶¶ 11–12; Skebe Decl., Dkt. No. 25-1, Ex. J.)  In reaching its conclusion, the committee relied on plaintiff's most recent classification committee chrono, which stated that plaintiff was double cell clear, with no documented history of in-cell violence, predatory behavior, or victimization concern.  (Martinez Decl. ¶ 13.)  Martinez reviewed plaintiff's disciplinary record and noted no rule violations (RVR), no record of in-cell violence or victimization concern.  (*Id.* ¶ 14.)  With respect to plaintiff's mental health condition, Martinez noted that plaintiff was a participant in the Mental Health Services Delivery System, but noted no present recommendation from CTF clinical staff for plaintiff to be single cell housed.  (*Id.* ¶ 16.)

Appeal of UCC Decision

Plaintiff filed an inmate appeal following his June 2016 UCC hearing related to the committee's denial of single cell status.  (Skebe Decl., Ex. K.)  In his appeal, he noted that the UCC did not consider his prior rule violations, his prior single cell designation, and his mental health evaluations.  (*Id.* at 75–77.)  The appeal was bypassed at the first level and denied at the second level by Martinez.  (*Id.* at 79–82.)  Martinez interviewed plaintiff, reviewed his Classification Committee Chrono, reviewed plaintiff's past RVRs, and his most current Mental Health Placement Chrono.  (*Id.* at 79–81; Martinez Decl. ¶¶ 13–16.)  Martinez found no RVRs for in-cell violence but did find several RVRs for plaintiff refusing to accept cellmates.  (Skebe Decl., Ex. K at 81; Martinez Decl. ¶ 14.)  Martinez noted that plaintiff was part of the Correctional Clinical Case Management System (CCCMS) level of care, but found no recommendation from clinical staff for plaintiff to be given single cell status.  (Skebe Decl., Ex. K at 81; Martinez Decl. ¶ 16.)  While the appeal was pending, Martinez spoke with plaintiff's assigned clinician, Dr. De Antoni, to ascertain whether the mental health team recommended single cell status.  (Martinez

Decl. ¶ 16.) Dr. De Antoni advised that a follow up visit was scheduled with plaintiff's clinical team to address his classification status. (*Id*.; Skebe Decl., Ex. K at 81.)

The appeal was denied at the third level by the appeals examiner. The decision stated that the UCC committee appropriately evaluated all relevant factors related to housing and noted that plaintiff's IDTT (interdisciplinary treatment team) did not find single cell status warranted. (Skebe Decl., Ex. K at 74.)

<u>Interdisciplinary Treatment Team Evaluation</u>

Defendant Dr. De Antoni, a licensed psychologist, was assigned as plaintiff's mental health clinician at CTF, and served as a member of plaintiff's mental health IDTT. (De Antoni Decl., Dkt. No. 25-4 ¶¶ 1, 5.) Plaintiff's initial IDTT meeting at CTF took place on June 28, 2016, with plaintiff and De Antoni present, as well as a psychiatrist and correctional counselor. (*Id*. ¶ 6; Skebe Decl., Ex. B at 14.) Plaintiff's mental health diagnosis was documented as depressive disorder with mixed features, including anxiety and racing thoughts and a history of bipolar affective disorder. (Skebe Decl., Ex. B at 9–10; De Antoni Decl. ¶ 6.) Upon being interviewed, plaintiff denied any suicidal thoughts or hallucinations. (De Antoni Decl. ¶ 6.) The IDTT continued plaintiff's level of care in CCCMS in accordance with plaintiff's request and with the agreement of the IDTT. (*Id*.) Plaintiff's treatment plan included mental health treatment with the goal of meeting once a month to decrease plaintiff's depression and racing thoughts and lower his anxiety. (Skebe Decl., Ex. B at 11; De Antoni Decl. ¶ 6.) In considering plaintiff's current mental health, diagnosis, history, and treatment plan, the IDTT did not find any special custody status clinically necessary, but agreed to revisit the issue if plaintiff's mental health deteriorated. (De Antoni Decl. ¶ 7.)

Plaintiff submitted a healthcare service request on July 20, 2016, writing: "need to consult mental health clinician immediately about housing arrangement, anxiety and heightening tension, leading to a det[er]iorating condition." (Skebe Decl., Ex. C at 20.) De Antoni met with plaintiff on July 26. (De Antoni Decl. ¶ 7.) Plaintiff stated that he required a single cell because of anxiety and heightening tension. (De Antoni Decl. ¶ 8; Skebe Decl., Ex. C at 21.) During the session, plaintiff stated: "I'm not going to do anything irrational unless I'm pushed. This cellie is there but

1    is not there. There is increasing tension. I did get another cellie and moved. It is still not working

2    out." (*Id*.; De Antoni Decl. ¶ 8.) Plaintiff also stated that he had spoken with Martinez about his

3    housing issue and requested to be sent back to CMC. (Skebe Decl., Ex. C at 21.)

4          In response to plaintiff's concerns, De Antoni scheduled a special IDTT meeting on

5    August 2, 2016, to assess plaintiff's request for single cell status. (De Antoni Decl. ¶ 9.) The

6    IDTT concluded that single cell status was not clinically necessary. (*Id*.)

7          Following plaintiff's IDTT meeting in June 2016, through his annual IDTT review on May

8    11, 2017, plaintiff met with mental health staff on a regular basis. (De Antoni Decl. ¶ 13; Skebe

9    Decl., Ex. E.) During his clinical visits with De Antoni, plaintiff frequently reported feeling

10   anxious and stressed about double celling. (*Id*. ¶ 14; Skebe Decl., Ex. E at 30–36.) Plaintiff also

11   reported his anxiety surrounding his frequent cell changes and the need to adjust to new cellmates

12   and reported feeling depressed about being denied a single cell. (Skebe Decl., Ex. E at 30–36.)

13         De Antoni continued to be a member of plaintiff's IDTT and participated in plaintiff's

14   annual review on May 11, 2017. (De Antoni Decl. ¶ 16.) The IDTT again concluded that single

15   cell status was not clinically necessary. (*Id*.)

16   <u>Appeal of 2017 IDTT decision</u>

17         In response to the May 11, 2017 IDTT decision, plaintiff submitted a healthcare appeal.

18   (Gates Decl., Dkt. No. 25-2 ¶ 12.) In the appeal, plaintiff noted his extensive history of mental

19   illness and participation in CCCMS level of care, explaining that double celling has caused him

20   anxiety and tension. (Gates Decl., Ex. B at 15.) He also indicated that a committee member

21   stated, if they give plaintiff single cell status then they would have to give it to everybody. (*Id*.)

22   The appeal was denied at the first level by Defendant Dr. Wynn. (*Id*. at 17.) In reaching his

23   decision, Wynn reviewing plaintiff's initial grievance, interviewed plaintiff, and reviewed

24   plaintiff's clinical chart. (Wynn Decl., Dkt. No. 25-5 ¶ 13.) Wynn noted that plaintiff was

25   enrolled in CCCMS and met with clinical staff on a frequent basis and found no suggestion that

26   plaintiff's mental health required single cell housing. (*Id*. ¶ 14.) Wynn recommended that

27   plaintiff work with his clinical staff surrounding his anxiety related to his housing concerns. (*Id*.;

28   Gates Decl., Ex. B at 17.)

Plaintiff's appeal was denied by Defendant Dr. Howlin at the second level of review. (*Id.* at 19–20.) In reaching his decision, Howlin reviewed plaintiff's clinical chart, initial grievance, the decision at the first level of review, and plaintiff's appeal to the second level of review. (Howlin Decl., Dkt. No. 25-6 ¶ 13.) Howlin noted that plaintiff was enrolled in CCCMS, had access to mental health staff, and found plaintiff's needs did not warrant single cell housing. (*Id.* ¶ 14.)

Plaintiff's appeal was denied at the final level of review. The notes of the decision state that plaintiff was found to have received appropriate treatment by CTF clinical staff. (Gates Decl., Ex. B at 12.)

Other Medical History

Plaintiff's CTF medical notes indicate that he suffers from, among other things, ADHD, bipolar disorder, depressive disorder, and schizophrenia spectrum and other psychotic disorder. (Traverse, Ex. A, Dkt. No. 30 at 2–10.) Plaintiff's CTF medical notes from 2018 and 2019 indicate that his anxiety and irritability decreased during the time he did not have a cellmate. (Traverse, Ex. P at 70–84.)

**PROCEDURAL BACKGROUND**

Plaintiff filed his initial complaint on October 11, 2019. Dkt. No. 1. The Court dismissed the complaint with leave to amend because it failed to demonstrate that each named defendant personally participated in the deprivation of plaintiff's constitutional rights, and because it alleged unrelated claims against different sets of defendants. Dkt. No. 6. Plaintiff filed an amended complaint on November 21, 2019. Dkt. No. 7. The Court dismissed plaintiff's amended complaint with leave to amend, because it did not allege any violation of federal constitutional or statutory rights. Dkt. No. 9. On January 16, 2020, plaintiff filed a second amended complaint. Dkt No. 10. On February 3, 2020, the Court ordered partial service, finding that plaintiff stated a cognizable claim for deliberate indifference to his serious medical needs against Defendants Martinez, De Antoni, Wynn, and Howlin. Dkt. No. 11. Plaintiff's remaining claims were dismissed. *Id.*

**STANDARD OF REVIEW**

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. On an issue for which the opposing party by contrast will have the burden of proof at trial, as is the case here, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(c). A verified complaint may be used as an opposing affidavit, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence. *See Keenan v. Hall*, 83 F.3d 1083, 1090 n.1 (9th Cir. 1996), *amended*, 135 F.3d 1318 (9th Cir. 1998) (treating allegations in prisoner's verified amended complaint as opposing affidavit). The Court is concerned only with disputes over material facts and "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. It is not the task of the court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment. *Id.* If the nonmoving party fails to make this showing, "the moving party is entitled to a judgment as a matter of law." *Celotex*, 477 U.S. at 323 (internal quotation marks omitted).

**DISCUSSION**

Plaintiff alleges that Defendants Martinez, De Antoni, Wynn, and Howlin violated his Eighth Amendment rights by making their respective decisions denying his requests for single cell status. Respondents counter that plaintiff's claims are unexhausted and fail to raise a genuine dispute of material fact. Because plaintiff has not presented evidence precluding summary judgment on his Eighth Amendment claim, the Court will not separately address the issue of exhaustion.

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (equating the standard with that of criminal recklessness). The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but "must also draw the inference." *Id.* Consequently, in order for deliberate indifference to be established, there must exist both a purposeful act or failure to act on the part of the defendant and harm resulting therefrom. *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992) (overruled on other grounds, *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc)).

The Supreme Court has further clarified this standard by holding that "it is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Eighth Amendment." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). A mere accident or evaluative mistake is not to be characterized as wanton infliction of unnecessary pain. *Estelle*, 429 U.S. at 105.

A plaintiff must show that his doctors or nurses embarked on a course of "medically unacceptable" treatment in "conscious disregard of an excessive risk to [his] health." *Toguchi v. Chung*, 391 F.3d 1051, 1058-60 (9th Cir. 2004). A claim of mere negligence related to medical problems, or a difference of opinion between a prisoner patient and a medical doctor, is not enough to make out a violation of the Eighth Amendment. *Id.*; *Franklin v. Oregon*, 662 F.2d

7

1337, 1344 (9th Cir. 1981).

### A. Martinez

Plaintiff claims that Martinez was deliberately indifferent when she denied him single cell status at his 2016 UCC meeting without considering all relevant factors, and improperly denied his inmate appeal. Plaintiff has not identified evidence that precludes summary judgment in Martinez's favor.

Martinez has shown that her decisions comported with the relevant housing classification regulations. The California Code of Regulations makes it clear that inmates are not entitled to single cell housing. Cal. Code Regs. tit. 15, § 3269. Under § 3269(d), single cell status "shall be considered for those inmates who demonstrate a history of in-cell abuse, significant in-cell violence towards a cell partner, verification of predatory behavior towards a cell partner, or who have been victimized in-cell by another inmate." Prison staff must consider the "inmate's pattern of behavior, not just an isolated incident" and must consider the "following facts when evaluating single cell status . . . (1) [p]redatory behavior . . . characterized by aggressive, repeated attempts to physically or sexually abuse another inmate[;] (2) documented and verified instances of being a victim of in-cell physical or sexual abuse by another inmate." *Id*. With respect to inmates with medical and mental health concerns, a 2016 memorandum drafted by Secretary Kernan ("Kernan Memorandum") states that the screening authority "should consider the recommendations of medical and mental health staff regarding the most appropriate housing for the inmate given the vulnerability that may be created by their medical or mental health condition(s)." (Skebe Decl., Ex. L.) The Kernan Memorandum specifies that screening staff should consider "all available factors when determining an inmate's housing assignment" including, but not limited to: (1) length of sentence; (2) enemies and victimization history; (3) criminal influence demonstrated over other inmates; (4) vulnerability of the inmate due to medical, mental health, and disabilities; (5) reason(s) for segregation; (6) history of "S" (single-cell) determination; and (7) history of in-cell assaults and/or violence. (*Id*.)

At the UCC hearing, Martinez and the committee reviewed plaintiff's disciplinary record and his past classification committee chrono and found nothing to indicate he should be single cell

8

1  housed.  Martinez also noted plaintiff's mental health condition but found no suggestion from
2  clinical staff that he should be placed in a single cell.  There is simply nothing in the record to
3  suggest that Martinez's decision was carried out with deliberate indifference to plaintiff's needs.
4  Instead, the record shows that Martinez considered the relevant factors in finding plaintiff double
5  cell eligible.

6       Plaintiff points to his documented history of mental illness and past grants of single cell
7  status in support of his argument that Martinez was deliberately indifferent when she declined to
8  grant him single cell status.  The record does not support plaintiff's contention.  First, Martinez did
9  consider plaintiff's mental health condition and housing history at the 2016 UCC hearing, and
10 nothing in the record suggests otherwise.  (Martinez Decl. ¶¶ 12–18.)  Second, a review of
11 plaintiff's central file pertaining to housing and classification decisions between December 2003
12 and July 2014 shows that plaintiff was generally deemed double cell eligible, at multiple
13 institutions, by multiple classification committees.  (*See* Skebe Decl., Ex. I.)

14      Plaintiff relies heavily on facts in the record showing that he was previously assaulted at
15 Folsom State Prison in 2012 and was twice granted an "S" suffix for single cell housing.  These
16 facts do not support a deliberate indifference finding.  The record reflects that the assault was
17 deemed local to Folsom State Prison and took place in the main yard, and there is no
18 documentation showing that it was carried out by a cellmate.  (*See* Skebe Decl., Ex. I at 64; Skebe
19 Decl., Ex. N, Baptiste Depo. 38:24–40:23.)  The "S" designations were made more than a decade
20 before plaintiff's 2016 UCC hearing, were assigned temporarily, and were removed after limited
21 periods of time.  (*See* Skebe Decl., Ex. I at 46–51.)  Overall, nothing in the record creates a
22 genuine issue of fact suggesting that Martinez carried out her 2016 UCC decision with "obduracy
23 and wantonness" — necessary prerequisites for a violation of the Eighth Amendment.

24      The same is true regarding plaintiff's appeal of the UCC decision, in which Martinez
25 served as the second level reviewer.  Martinez reviewed plaintiff's Classification Committee
26 Chrono, his past RVRs, and his most current Mental Health Placement Chrono.  (Skebe Decl., Ex.
27 K at 79–81; Martinez Decl. ¶¶ 13–16.)  Martinez also considered plaintiff's mental health
28 condition and spoke with De Antoni on his mental health team.  Ultimately, Martinez denied the

9

1    appeal, writing "[t]here is currently no documentation indicating the appellant meets the criteria
2    for Single Cell status." (Skebe Decl., Ex. K at 81.) There are no facts in the record suggesting
3    that Martinez knew of and disregarded "an excessive risk to inmate health or safety" in denying
4    plaintiff's appeal. *Farmer*, 511 U.S. at 837. Because plaintiff has failed to raise a genuine dispute
5    of material fact, summary judgment is GRANTED in favor of Martinez.

**B.  Dr. De Antoni**

Plaintiff contends that De Antoni "elected to collude with custody staff decision not to re-instate" his single cell status despite his mental health concerns. (Pet. at 3.) Again, Plaintiff has not identified evidence raising any genuine issue of fact as to whether De Antoni's medical decisions amounted to deliberate indifference.

As part of plaintiff's IDTT team, De Antoni met with plaintiff soon after his arrival at CTF. (De Antoni Decl., Dkt. No. 25-4 ¶ 6.) That meeting included an interview of plaintiff, an assessment of his mental health diagnosis, and a detailed treatment plan. (*Id.*; Skebe Decl., Ex. B at 11.) At the meeting, plaintiff's level of care in CCCMS was continued in accordance with plaintiff's request. (*Id.*) After plaintiff submitted a healthcare service request related to plaintiff's housing concerns, De Antoni met with plaintiff 6 days later and scheduled a special IDTT meeting to consider plaintiff's housing concerns. (De Antoni Decl. ¶ 9.) While the IDTT found single cell status not clinically necessary in 2016 and 2017, plaintiff received extensive mental health treatment during that time, including numerous meetings with De Antoni, and outlined treatment plans. (De Antoni Decl. ¶ 13; Skebe Decl., Ex. E.)

Plaintiff points to various medical records indicating that he felt anxious and stressed by having cellmates, in support of his claim that De Antoni failed to appropriately assess his mental health concerns. Specifically, he recounts all the instances in which he raised the issue of double celling with De Antoni, and points to his documented medical notes showing he suffers from ADHD, bipolar disorder, schizophrenia spectrum and other psychotic disorder. He also references his past medical notes and evaluations which show that double celling was a frequent concern for him (Traverse, Ex. P at 70–84), and specifically references a 2002 evaluation at High Desert State Prison, which states that plaintiff "demonstrated peculiar and odd mannerisms that suggested to

10

staff the possibility of a mental illness. The description of these behaviors are not fully elaborated, but the suggestion is made that he was quick to abuse emotionally and physically weaker inmates" (Traverse, Ex. B at 14). Finally, he points to his medical notes from 2018 and 2019, following the 2016 and 2017 IDTT decisions, which show that plaintiff's anxiety and irritability decreased when he no longer had a cellmate.

While plaintiff points to evidence in the record tending to show that the issue of double celling was a continuous source of anxiety for him, he still fails to provide any evidence demonstrating that De Antoni's medical recommendations created a "substantial risk of serious harm." *Farmer*, 511 U.S. at 837. It is evident from the record that plaintiff received continuous mental health support from De Antoni and was given various treatment plans to reduce his anxiety and stress surrounding double celling. Plaintiff contends that De Antoni's housing decisions were made without an appropriate assessment of plaintiff's mental health condition. Without more, this accusation amounts at most to negligence rather than deliberate indifference. *See Toguchi v. Chung*, 391 F.3d 1051, 1059 (9th Cir. 2004) ("there must be a conscious disregard of a serious risk of harm for deliberate indifference to exist.") (citation omitted). And while plaintiff undoubtedly would have preferred that his IDTT suggest him for single cell housing, a difference of opinion between plaintiff and his care team is insufficient under the Eighth Amendment. *See Franklin*, 662 F.2d at 1344.

Plaintiff also argues that Martinez and De Antoni colluded to deny him single cell status. Plaintiff points to the fact that Martinez spoke with De Antoni concerning plaintiff's mental health concerns in adjudicating his appeal. First, the contention that the parties colluded lacks any factual support in the record. Second, the California Code of Regulations requires the classification committee to make housing decisions with the express input of clinical staff. *See* Cal. Code Regs. tit. 15, § 3269(f) ("a classification committee shall make the final determination of an inmate's cell assignment. The classification committee shall consider the clinical recommendations made by the evaluating clinician with assistance from the clinician who participates in the committee"). In sum, plaintiff has not identified any evidence precluding summary judgment as to De Antoni.

### C. **Drs. Wynn and Howlin**

Plaintiff alleges that Drs. Wynn and Howlin served in supervisory roles, overseeing the clinical staff at CTF who did not recommend him for single cell housing. He also contends that they are liable for denying his 2017 healthcare grievance.

Plaintiff has not identified any evidence that precludes summary judgment. As an initial matter, there is no supervisory liability under Section 1983. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, when a named defendant holds a supervisory position, there must be a causal link between him and the claimed constitutional violation. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979). Here, there is no causal link. Wynn and Howlin did not serve on the IDTT in 2016 or 2017, nor is there any evidence that they treated plaintiff for his mental health needs or were involved in the training and supervision of De Antoni. (Wynn Decl. ¶¶ 6, 9, 11.)

With respect to plaintiff's healthcare appeal, the fact that Wynn and Howlin participated in the grievance process is generally insufficient to give rise to personal liability under Section 1983. *See, e.g., Wilson v. Woodford*, No. 1:05–cv–00560–OWW–SMS, 2009 WL 839921, at *6 (E.D. Cal. Mar. 30, 2009) (ruling against prisoner on administrative complaint does not cause or contribute to constitutional violation). This is because a prisoner has no constitutional right to an effective grievance or appeal procedure. *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (holding that prisoner has no constitutional right to effective grievance or appeal procedure); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) ("There is no legitimate claim of entitlement to a grievance procedure.").

There is nothing to indicate that Wynn or Howlin displayed deliberate indifference in adjudicating plaintiff's appeal. Both doctors reviewed plaintiff's clinical chart and the details of plaintiff's appeal. In addition, Wynn interviewed plaintiff about his grievance. Based on their findings, both Wynn and Howlin found that single cell housing was not warranted. While plaintiff disagreed with their conclusions, as already noted, a difference of opinion between a prisoner patient and a medical doctor is not enough to make out a violation of the Eighth Amendment. *Franklin*, 662 F.2d at 1344.

Plaintiff also states that he wrote Howlin two letters "concerning the matter," to which

Howlin "elected not to respond," and that "both Defendants had knowledge of the act Plaintiff was complaining of and agreed to them, and allowed it to happen." (Traverse at 16.) Because the record lacks any evidence that the medical decisions by clinical staff amounted to deliberate indifference, Howlin and Wynn cannot be faulted for failing to take remedial action. For these reasons, summary judgment is GRANTED in favor of Wynn and Howlin.

## CONCLUSION

Because plaintiff fails to show any genuine dispute of material fact, defendants' motion for summary judgment (Docket No. 25) is GRANTED. The Clerk shall enter judgment in favor of defendants, terminate Dkt. No. 25, and close the file.

**IT IS SO ORDERED.**

Dated: 7/30/2021

HAYWOOD S. GILLIAM, JR.
United States District Judge

13